# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 2000 Session

## TOMMY RAY WARREN v. STATE OF TENNESSEE

**Appeal as of Right from the Circuit Court for Wayne County**
**No. 10816    Jim T. Hamilton, Judge**

---

**No. M1999-1319-CCA-R3-PC  - Filed August 10, 2000**

---

On April 12, 1993, the petitioner, Tommy Ray Warren, pled guilty in the Wayne County Circuit Court to two counts of first degree murder.[1]  The trial court imposed a life sentence for each count of murder and further ordered consecutive service of the life sentences.  The petitioner subsequently filed a petition for post-conviction relief, alleging that his guilty pleas were not knowing and voluntary because he was not aware that his possible mental retardation could render him ineligible for the death penalty.  The petitioner also alleged that trial counsel's failure to pursue a mental retardation hearing constituted ineffective assistance of counsel.  The post-conviction court dismissed the petition,  finding that the petitioner's pleas were knowing and voluntary and that the petitioner had received effective assistance of counsel.  The petitioner now appeals the court's denial of relief.  Following a review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES AND JERRY L. SMITH, JJ., joined.

J. Jay Cheatwood, Lawrenceburg, Tennessee, Daniel J. Runde, Pulaski, Tennessee, and John Colley, Columbia, Tennessee, for the appellant, Tommy Ray Warren.

Paul G. Summers, Attorney General and Reporter, Elizabeth T. Ryan, Assistant Attorney General,  Mike Bottoms, District Attorney General, and James G. White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Factual Background

On April 12, 1993, the petitioner pled guilty in the Wayne County Circuit Court to two counts of first degree murder.  The petitioner's pleas resulted from the deaths of Della

---

[1]The record reflects that the appellant pled guilty to one charge of first degree murder and entered a "best interest" plea of guilty to the second charge.

Mae Richter and Patricia Sue Weaver on March 24, 1992. The facts set forth at the guilty plea hearing and agreed to by the petitioner show that Ms. Weaver died as a result of injuries she received when she was struck by the petitioner's truck as she and Ms. Richter walked along the side of a rural road near Iron City, Tennessee. The petitioner then kidnapped and murdered Ms. Richter. For these offenses, the petitioner received two consecutive terms of life imprisonment.

On January 23, 1996, the petitioner filed a petition for post-conviction relief, alleging that his guilty pleas were not knowing and voluntary because he was not aware that his possible mental retardation could render him ineligible for a sentence of death. The petitioner also alleged that trial counsel's failure to pursue a hearing on the issue of mental retardation constituted ineffective assistance of counsel. The post-conviction court conducted an evidentiary hearing on December 17, 1998, and dismissed the petition, finding that the petitioner's pleas were knowing and voluntary and that the petitioner had received effective assistance of counsel.

The petitioner's trial counsel, Daniel J. Runde, testified at the post-conviction evidentiary hearing. Mr. Runde related that, following the petitioner's arrest for the murders of Ms. Richter and Ms. Weaver, the petitioner was examined by a clinical psychologist, Dr. Gillian Blair, for the purpose of assessing his competency to stand trial and determining whether he is mentally retarded. A determination that the petitioner is mentally retarded would have rendered him ineligible for a sentence of death. However, in order to meet the statutory definition of mental retardation, a defendant must possess an I.Q. of 70 or below, he must show deficits in adaptive behavior, and his mental retardation must have been manifest prior to age eighteen. Tenn. Code Ann. § 39-13-203(a) (1997). The petitioner's psychological examination revealed that he possesses an I.Q. of 71. Because the petitioner's I.Q. score exceeded the maximum score and because the petitioner exhibited few deficits in adaptive behavior, Mr. Runde feared that he would not be able to prove the petitioner's mental retardation.

Nevertheless, Mr. Runde scheduled a hearing in order to address the petitioner's possible mental retardation. Moreover, Mr. Runde, his co-counsel, and the public defender met with the petitioner on April 1, 1993. At this meeting, Mr. Runde explained to the petitioner his various options and the potential consequences of selecting each option. Specifically, he explained to the petitioner that the best possible result would be convictions of vehicular homicide and second degree murder, and the worst possible result would be convictions of first degree murder and two sentences of death. Mr. Runde also advised the petitioner of the results of Dr. Blair's examination and of the implications of the examination's results, including the potential consequences should the petitioner fail to prove his mental retardation at the scheduled hearing. Ultimately, Mr. Runde advised the petitioner that he could avoid the death penalty by pleading guilty to two counts of first degree murder but indicated that the petitioner must make the final decision. At the conclusion of the meeting, the petitioner stated that he wished to confer with his wife before making any decision.

On April 7, 1993, the petitioner met with his wife, his sister, and his attorneys for approximately two hours and again discussed his options, including the option of pleading guilty to two counts of first degree murder. Moreover, on April 9, 1993, the petitioner met with his

wife, his children, and Mr. Runde for approximately two hours and discussed the option of pleading guilty. Following this meeting, the petitioner advised counsel of his decision to plead guilty.

At the guilty plea hearing on April 12, 1993, the trial court questioned the petitioner at length concerning the knowing and voluntary nature of his guilty pleas and his satisfaction with counsel. The petitioner repeatedly indicated that his guilty pleas were knowing and voluntary and that he was satisfied with the performance of his counsel. The trial court accepted the petitioner's guilty pleas and, as noted earlier, imposed two consecutive life sentences. Due to the petitioner's pleas, the scheduled hearing on the petitioner's possible mental retardation was cancelled.

## II. Analysis

On appeal, the petitioner again challenges the knowing and voluntary nature of his guilty pleas and contends that his trial counsel rendered ineffective assistance of counsel. Because the petitioner filed his petition for post-conviction relief on January 23, 1996, the petition is governed by the provisions of the 1995 Post-Conviction Procedure Act. Accordingly, the petitioner was required at the post-conviction evidentiary hearing to prove the factual allegations in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f)(1997). Moreover, on appeal, the post-conviction court's factual findings are binding upon this court unless the evidence preponderates otherwise. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). "In evaluating whether the evidence preponderates against the . . . [post-conviction] court's findings, we are guided by longstanding rules of appellate procedure." Henley v. State, 960 S.W.2d at 578. Thus, questions concerning the credibility of witnesses and the weight and value of their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). This court will not re-weigh or reevaluate the evidence or substitute its inferences for those of the post-conviction court. Williams v. State, No. 03C01-9801-CC-00013, 1999 WL 58608, at *2 (Tenn. Crim. App. at Knoxville, February 9, 1999). That having been said, this court reviews de novo mixed questions of law and fact, including the issues of deficient performance by counsel and possible prejudice to the defense. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

a.      **The Guilty Pleas**

We first address the petitioner's contention that his guilty pleas were neither knowing nor voluntary. In this regard, the petitioner asserts that he pled guilty because the State had given notice of its intent to seek the death penalty, he was "scared to death," and he was unaware that, if the trial court found him to be mentally retarded, he would not be eligible for a sentence of death.

In order to pass constitutional muster, a guilty plea must be made knowingly, understandingly, and voluntarily. Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998)(citing Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713 (1969)); see also State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977). To determine the knowing and voluntary nature

of a guilty plea, the court must look to various circumstantial factors, including

> the relative intelligence of the defendant; the degree of his
> familiarity with criminal proceedings; whether he was represented
> by competent counsel and had the opportunity to confer with
> counsel about the options available to him; the extent of advice
> from counsel and the court concerning the charges against him; and
> the reasons for his decision to plead guilty, including a desire to
> avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

In the instant case, while the petitioner does have some mental difficulties, a psychological examination demonstrated that he was competent to stand trial. The petitioner conferred with counsel several times over the course of proceedings, and counsel explained to the petitioner the various charges and all available options, including the results and implications of the petitioner's psychological examination. The petitioner also had some familiarity with criminal proceedings, particularly because he had previously pled guilty to assault in Alabama. The trial court questioned the petitioner at length concerning both the voluntariness of his pleas and whether the petitioner understood the various repercussions stemming therefrom. The petitioner told the trial court repeatedly that his pleas were voluntary and that he understood his guilty pleas and the rights he was thereby forfeiting.

However, the petitioner now contends that his pleas were neither knowing nor voluntary because his concern about the possible imposition of the death penalty was the key factor in his decision to plead guilty. This court has previously established that "a guilty plea is not rendered involuntary by the fact that the accused is faced with an election between a possible death sentence on a plea of not guilty and a lesser sentence upon a guilty plea." Bratton v. State, 477 S.W.2d 754, 757 (Tenn. Crim. App. 1971). Nevertheless, the petitioner claims that the possible imposition of the death penalty should not have been a factor in his decision to plead guilty because he was not informed by counsel that, due to his possible mental retardation, he may have been ineligible for the death penalty. Contrary to the petitioner's claim, Mr. Runde testified that he fully informed the petitioner about the results of his psychological examination and the implications of those results. The post-conviction court determined that the petitioner's trial counsel was more credible, a determination that is not subject to review by this court. See Burns, 6 S.W.3d at 461. Moreover, we agree with the post-conviction court that the petitioner failed to demonstrate any likelihood that he could have proven mental retardation sufficient to preclude the imposition of the death penalty. Again, the petitioner's pleas are not rendered void simply because he wished to avoid possible death sentences and submit to lesser sentences of life imprisonment. This issue is without merit.

### b.      Ineffective Assistance of Counsel

The petitioner next argues that his trial counsel was ineffective in failing to pursue a hearing on the issue of the petitioner's mental retardation. The petitioner contends that, if he had been ineligible for the death penalty due to mental retardation, he would not have pled guilty to the murders of Della Mae Richter and Patricia Sue Weaver.

-4-

In order to establish ineffective assistance of counsel in contravention of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution, a petitioner must demonstrate that (1) his counsel's representation was deficient and that (2) the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687-697, 104 S.Ct. 2052, 2064-2069 (1984). See also Burns, 6 S.W.3d at 461; Henley, 960 S.W.2d at 579-580; Powers v. State, 942 S.W.2d 551, 557 (Tenn. Code. Ann. 1996). Reviewing courts need not address these components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. Burns, 6 S.W.3d at 461; Henley, 960 S.W.2d at 580.

In order to demonstrate that his counsel's performance was deficient, the petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 688; 104 S. Ct. 2064. See also Burns, 6 S.W.3d at 462. In Tennessee, our supreme court has interpreted this test to require a showing that counsel's performance was not within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In applying this test, this court should refrain from second-guessing tactical and strategic decisions by defense counsel. Henley, 960 S.W.2d at 579. Rather, this court should defer to such decisions if they are based upon adequate preparation. Burger v. Kemp, 483 U.S. 776, 794, 107 S.Ct. 3114, 3126 (1987). See also Holt v. State, No. 01C01-9805-CC-00201, 1999 WL 729206, at *7 (Tenn. Crim. App. at Nashville, September 20, 1999).

Ultimately, the primary concern of the court should be the fundamental fairness of the trial proceedings. State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). Id. Thus, as previously noted, a petitioner must establish prejudicial, as opposed to merely deficient, performance by trial counsel. In order to establish prejudice, a petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different but for the defective performance of counsel. Henley, 960 S.W.2d at 580. In the context of a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985); see also Tate v. State, No. 02C01-9810-CR-00304, 1999 WL 608703, at *3 (Tenn. Crim. App. at Jackson, August 12, 1999). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694; 104 S. Ct. at 2068.

Again, in order to avoid eligibility for the death penalty, the petitioner was required to demonstrate deficits in adaptive behavior in addition to significantly subaverage general intellectual functioning and early manifestation of mental retardation. Tenn. Code Ann. § 39-13-203(a). In this case, the petitioner's trial counsel concluded that it would be extremely difficult to prove deficits in the petitioner's adaptive behavior, i.e., the petitioner's inability "to behave so as to adapt to surrounding circumstances." See State v. Smith, 893 S.W.2d 908, 917 (Tenn. 1994). The petitioner could, and did, hold a job for significant periods of time; he was married to the same woman for a number of years and was by all accounts a good father to his children; he served in the United States Army and was discharged for physical reasons, not

-5-

maladaptive ones; and, he was able to pass his driver's license test. The petitioner's trial counsel felt that all of these factors would weigh against any finding of mental retardation. Moreover, the State's case was strong, and trial counsel was concerned that, if the petitioner failed to establish his mental retardation and proceeded to trial, the petitioner would risk the imposition of the death penalty. Notwithstanding these concerns, the petitioner's trial counsel still arranged for a hearing concerning the petitioner's mental retardation. However, the petitioner chose to plead guilty before the scheduled hearing. In light of the petitioner's knowing and voluntary guilty plea, there was no need for a hearing on the issue of mental retardation. In sum, the petitioner has failed to demonstrate that counsel was ineffective for failing to pursue the scheduled hearing nor does he attempt to show how he was prejudiced by this failure. This issue is also without merit.

### III.  Conclusion.
For the foregoing reasons, we affirm the judgment of the post-conviction court.


_____
Norma McGee Ogle, Judge